MARTIN L. SWEET AND DANIEL M. RUTHERFORD v.
RUSSELL H. WOODIN AND GEORGE W. POWERS.

*Bills and notes—Notice to indorser—Diligence—Joint maker—Liability of parties to commercial paper.*

1. The rule requiring an indorser to be promptly notified of the dishonor of a note is one not of form, but of substance. It is a legal condition of the contract that he shall be notified or discharged, unless where reasonable diligence fails to find him, and this rule requires that the person giving the notice shall use such means as are reasonably calculated to find out the indorser's residence.

2. There is no legal presumption that the receiving teller at a bank knows anything about the parties on discounted paper, although he may do so.

3. It is the plain and obvious duty of a notary to apply to the officers of his own bank for information as to the residence of an indorser, and if they cannot give it to inquire where it is payable, as well as, in default of both, to seek further, which search, while not required to be unreasonably long where he has no clue, should be real, and not formal.

4. A second indorser, by putting his name above that of the payee, who has indorsed the note for the accommodation of the maker, chooses to make himself a joint maker, and disqualifies himself from recourse to the first indorser as liable to him in the order of time.[1]

5. It was held in *Greusel v. Hubbard,* 51 Mich. 95, that parties must sue and be sued on negotiable paper in the order in which they have seen fit to sign it.

6. A declaration in a suit under the statute against the indorser as well as the maker, must set forth a paper title accordingly.

7. Whether a firm can buy paper on which one of its members is a joint maker, and sue the other maker and an indorser under the statute in a suit at law, not decided.

Error to Kent. (Montgomery, J.) Argued October 26, 1888. Decided November 1, 1888.

[1] See *Brewer v. Boynton,* 71 Mich. 254 (head-note 2).

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Ward & Ward,* for appellants, contended:

1. The diligence shown in this case was as great as is required by the weight of authority; citing *Harris v. Robinson,* 4 How. 336; *Lambert v. Ghiselin,* 9 Id. 552; *Wood v. Corl,* 4 Metc. 203; *Chapman v. Lipscombe,* 1 Johns. 294.

2. Diligence having been shown, the fact that the notice was sent to the wrong address will not discharge the indorser; citing 2 Am. & Eng. Ency. Law, 417 (note 3); *Carroll v. Upton,* 3 N. Y. 272; *Garver v. Downie,* 33 Cal. 176.

3. Where all that can be learned is that the indorser lives in a given county, notice sent to the county seat of that county is good; citing *Bank v. Slason,* 13 Vt. 334; *Bank v. Russell,* 4 Gray, 167; *Rand v. Reynolds,* 2 Gratt. 171; and where, after due diligence, the residence of the indorser cannot be ascertained, no notice is necessary; citing 1 Pars. Notes and Bills, 493 (note *c*); and it would seem proper in such a case to mail notice to the place of the date of the note; citing Am. & Eng. Ency. Law, 416 (note 6); *Sasscer v. Whitley,* 10 Md. 98; *Godley v. Goodloe,* 6 Smedes & M. 255; and subsequent correct information does not affect the question; citing *Bank v. Philbrick,* 40 N. H. 506.

*R. A. Maynard (Birney Hoyt,* of counsel), for defendant Powers, contended:

1. How. Stat. § 1586, authorizes service of notice by mail—

*a*—When the indorser resides or has a place of business in the same city, village, or township at which the notes are payable, and

*b*—When upon information obtained by diligent inquiry he shall be reported so to reside or have a place of business.

There is no proof bringing this case within either of these provisions.

2. There is no presumption that either the maker or indorser of a note resides at the place where it is dated and made payable; citing *Riggs v. Hatch,* 16 Fed. Rep. 838; *Lowery v. Scott,* 24 Wend. 358; *Fisher v. Evans,* 5 Binn. 541; *Carroll v. Upton,* 3 N. Y. 272; *Spencer v. Bank,* 3 Hill, 520; *Bank v. Peirce,* 3 Ala. 321; *Tyson v. Oliver,* 43 Id. 465; *Hill v. Varrell,* 3 Greenl. 233; *Lawrence v. Miller,* 16 N. Y. 235.

3. To constitute due diligence the inquiry must be pursued unti all sources of information are exhausted, unless a satisfactory answer is sooner received; citing *Hart v. McLellan,* 80 Me. 95

(13 Alt. Rep. 272); *Riggs v. Hatch,* 16 Fed. Rep. 838; *Peirce v. Pender,* 5 Metc. 352; *Lawrence v. Miller,* 16 N. Y. 235; *Bank v. Dermott,* 13 Johns. 432; *Spencer v. Bank,* 3 Hill; 520; *Barnwell v. Mitchell,* 3 Conn. 101; *Witridge v. Rider,* 22 Md. 548; *Gilchrist v. Donnell,* 53 Mo. 591.

CAMPBELL, J.    Plaintiffs, who were partners under the name of M. L. Sweet & Co., sued defendants on a promissory note, which ran as follows:

"$600.            GRAND RAPIDS, MICH., Dec. 31, 1885.
"Thirty days after date I promise to pay to the order of George Powers six hundred dollars, at the Fourth National Bank, value received; interest at ten per cent. after maturity              R. H. WOODIN."

Indorsed as follows:

"Pay Old National Bank, Grand Rapids, Mich., or order.                          M. L. SWEET.
                              "G. W. POWERS."

The maker, Mr. Woodin, made no defense. Mr. Powers defended on the ground that he received no notice of dishonor. This plea was sworn to, and no notice was sworn to have been sent to him at Sparta, where he lived, and there was no personal service. The notary who protested it did send a notice by mail directed to Powers at Grand Rapids. The protest, which contains an entry of notice, does not state any inability to find defendant's residence, but states it to have been at Grand Rapids as the reputed residence.

The question below was whether the notary had shown such due diligence as would hold the indorser, who did not actually receive the notice. The court below held that no such diligence was shown.

The rule requiring an indorser to be promptly notified of the dishonor of a note is one not of form, but of substance. It is a legal condition of the contract that he shall be notified or discharged, unless where reasonable diligence fails to find him. This rule requires that the

notary or other person giving the notice shall use such means as are reasonably calculated to find out the indorser's residence. To some extent this rule is not a fixed and rigid one. But it requires active diligence in hunting up the matter.

In the present case the notary, on the maturity of the note, received it from the ' teller of the Old National Bank, and presented it at the Fourth National Bank, where payment was refused. The only personal inquiry he made concerning the residence of defendant was of the receiving teller of the Old National Bank, who gave it to him to protest. That gentleman did not know the address. The witness said, in a general way, that no one in the bank knew it; but it does not appear that he asked any one else, and it does not appear that the cashier or members of the discount board were ignorant of it. It appears affirmatively that the cashier of the Fourth National Bank knew all about it, and from defendant's long service as deputy-sheriff it is probable many others did.

There is no legal presumption that a receiving teller knows anything about the parties on discounted papers, although he may do so. The cashier, or board of discount, usually know on whose credit a note is discounted, and the address of the parties through whom they claim. Where their usage requires two names besides that of the principal debtor, it would be rather loose banking not to know something about it. Furthermore,. where a note is payable at a particular bank, that establishment is quite likely to have such information. It is quite common where notes are payable at bank to leave them there for presentment, and for protest if needed.

It was a plain and obvious duty of the notary to apply to the officers of his own bank for information, and if they could not give it to inquire where it was payable,

as well as, in default of both, to seek further. His search, while not required to be unreasonably long where he has no clue, should be real, and not formal. In the present case there was no search at all, and no reason for failing to make one.

There is another difficulty in the case, which ought to be noticed. It seems to have been assumed that, because this note was signed by Woodin and Powers, for Woodin's accommodation, before Sweet signed it, therefore Sweet was the last indorser, and in that capacity entitled to look to Powers. The note appears to have been taken up by plaintiffs after its dishonor, with no transaction of purchase from the bank, and as a matter of course. The formality of striking out the special indorsement, or of having the name of the Old National Bank indorsed, is by the admission of the parties not material. But the testimony shows clearly that it was not meant as a purchase.

No one had any right to take it up but Powers or Sweet. Sweet, by putting his name above that of Powers, chose to make himself a joint maker with Woodin, and disqualify himself from recourse to Powers as liable to him in the order of time.[1] The case is in principle similar to that of *Greusel v. Hubbard,* 51 Mich. 95 (16 N. W. Rep. 248), where it was held that parties must sue and be sued on negotiable paper in the order in which they have seen fit to sign it. If Mr. Sweet had this note taken up, as seems to have been done, to remove his own liability, he might sue Woodin; but he could not sue Powers. The declaration did not set forth anything which would have authorized a suit on any other basis, as, being under the statute against the indorser as well as the maker, it must set forth a paper title accordingly,

[1] Sweet testified that he signed the note before it was negotiated, for Woodin's accommodation, that he might get the money on it.

and this was not done, unless both plaintiffs represent Mr. Sweet. We are not called on to say whether a firm can buy paper on which one of its members is a joint maker, and sue the other maker and an indorser under the statute in a suit at law

We think the verdict was rightly ordered for the defendant Powers. The judgment must be affirmed.

The other Justices concurred.