FIRST NATIONAL BANK OF LUDINGTON *v.* MICHIGAN-
ARKANSAS OIL CORPORATION.

1. BILLS AND NOTES—FRAUD—RIGHT OF ACCOMMODATION INDORSERS
TO NOTICE OF DISHONOR.
In an action on a promissory note executed by a corpora-
tion and indorsed by its directors, the finding of the trial
judge that the organization of the corporation and the
giving of the note were conceived in fraud, and that the
indorsers should therefore be held liable as original ob-
ligors not entitled to notice of dishonor, *held*, not sup-
ported by the record.[1]

2. SAME.
Under the negotiable instruments law (2 Comp. Laws
1915, § 6130), accommodation indorsers are each entitled
to notice of dishonor.[2]

3. SAME—WAIVER OF NOTICE OF DISHONOR.
Where two accommodation indorsers acknowledged in
writing their liability on the note subsequent to its dis-
honor, they waived notice of dishonor under 2 Comp. Laws
1915, § 6150.[3]

4. SAME—WHEN INDORSERS DISCHARGED FROM LIABILITY.
Accommodation indorsers who received no notice of dis-
honor and did not waive such notice are discharged from
liability.[4]

5. SAME.
Joint indorsers are discharged from liability unless all re-
ceive notice· of dishonor or all waive notice.[5]

6. SAME—EFFECT OF NEGOTIABLE INSTRUMENTS LAW.
The negotiable instruments law (2 Comp. Laws 1915, §
6109) has not changed the common-law rule as to liability
of joint indorsers except as to joint payees and joint in-
dorsees who indorse.[6]

7. SAME—LIABILITY OF JOINT ACCOMMODATION INDORSERS.
Joint accommodation indorsers, who indorsed a corpora-

[1]Bills and Notes, 8 C. J. § 1362; [2]Id., 8 C. J. § 444; [3]Id., 8 C.
J. § 993; [4]Id., 8 C. J. §§ 444, 890; [5]Id., 8 C. J. § 906; [6]Id., 8
C. J. § 906.
On necessity of protest and notice as between co-indorsers of
negotiable paper, see notes in 9 A. L. R. 1188; 32 A. L. R. 167.

tion's note in blank before delivery, were each entitled to
notice of dishonor, and all were discharged from liability
unless each and all of them received such notice or each
and all waived it.[7]

Error to Kent; Perkins (Willis B.), J.    Submitted
April 22, 1925.    (Docket No. 32.)    Decided July 16,
1925.

Assumpsit by the First National Bank of Ludington,
Michigan, against the Michigan-Arkansas Oil Corpora-
tion and others, indorsers, on a promissory note.
Judgment for plaintiff.    Defendant indorsers bring
error.    Reversed, and no new trial ordered.

*Emil B. Gansser*, for appellants.

*Elvin Swarthout*, for appellee.

McDONALD, C. J.   This is an action on a promissory
note payable to the plaintiff, made by the Michigan-
Arkansas Oil Corporation, and indorsed in blank be-
fore delivery by the other defendants, who are all
directors of the corporation.    It was a renewal of
a note originally given for $2,500 on which $1,000 had
been paid.    It was given on November 1, 1922, pay-
able in 60 days.    The due date was therefore De-
cember 31, 1922, which was on a Sunday.    The next
day, January 1, 1923, was a legal holiday, so that it
actually became due on January 2, 1923.    The note
contained no waiver of notice of presentment and dis-
honor.    It was not paid, and under date of January
4, 1923, the plaintiff mailed each of the indorsers a
letter notifying them of that fact.    There followed
considerable correspondence between Mr. Hammond,
vice president and manager of the bank, and some of
the defendants relative to payment, but no understand-

[7]Bills and Notes, 8 C. J. § 906.

ing was reached and this suit was begun.   The defense to the action was that the defendants had not been notified of the dishonor of the note within the time required by the statute, that there had been no waiver by them of such notice, and that therefore they were discharged from liability.   The case was tried in the circuit court without a jury.   The plaintiff was given a judgment.   The defendants Downes, Moore, and Wagar, bring error.

The circuit judge found that the notice of dishonor was sent to each of the defendants, but was not sent within the time fixed by the negotiable instruments law.   That, nevertheless, the defendants were not discharged, because they were not entitled to notice for two reasons, *first*, because they were "original obligors, each personally liable for the payment of the debt," and *second*, because they had waived notice.

That the defendants were original obligors and therefore not entitled to notice seems to be based on the conclusion reached by the circuit judge that the whole transaction, including the incorporation of the defendant company, was conceived in fraud and was fraudulent throughout.   In his opinion, he says:

"It is a reasonable conclusion also that the whole transaction, from its inception, was a joint adventure prosecuted in the guise of a corporation with the intention on the part of the contributors to raise a specific fund to be turned over to Gibbs, as trustee, to enable him to prosecute, at will, his oil ventures in Arkansas to the mutual benefit of all concerned.   Should these ventures prove successful, they would profit thereby, but should they prove otherwise, they would lose only the amount of their contributions and avoid personal liability for the corporation's indebtedness, should any accrue.   This conclusion is justified by the testimony of all the witnesses which clearly shows that the corporation was only a form, without any intention of the incorporators to use it for any lawful purposes for which a corporation is usually organized, but as only

a means to an end.    So far as the record shows, the corporation, as such never did any substantial business, except, perhaps, to give the notes in question and to send out a few notices and letters.    All its business transactions were carried on by Gibbs, as trustee."

There is nothing in the record to support this finding.    The evidence seems all to the contrary.    The corporation was organized by 18 men, each of whom subscribed and paid in $2,500 for his stock.    They selected a board of directors of substantial business men.    Director William L. Hammond was vice president of the First National bank of Ludington, and had been its manager for 28 years.    Mr. Wagar was active vice president of the Edmore State Bank, Mr. Moore was in the insurance business, Mr. Downes was an accountant, and Mr. Gibbs was a broker and a promoter.    With the exception of Gibbs, the directors were all men of good business standing in this State. And as to Gibbs it should be said that at that time he had the confidence of some very influential men connected with the Michigan Finance Company in Grand Rapids.    The best evidence, however, of the good faith of all of the men in organizing this company is that they did not attempt to sell any stock to the general public, but backed the enterprise with their own money. And when it became necessary to raise more money they secured it by indorsing the company's note instead of following the usual method of selling stock. The record is clear that all of the directors, including Gibbs, had faith in the enterprise which they organized to promote.    They acquired land in the oil region in Arkansas.    They drilled several wells.    The first one was a failure.    The second was a gusher and produced a flow of several thousand barrels a day. From this well they got a good sized lake of oil which they sold, but in attempting to control the flow they stopped it entirely and got no more oil from that well. The third well at first produced about 250 barrels a

day, but gradually settled down to a daily production of 40 barrels.   This well produced a net income of $1,067 a month.   The result of these drilling operations tended to increase the faith of the directors in the ultimate success of the business.   In May, 1922, they had $8,000 in the treasury, and decided to borrow $5,000 more for the purpose of putting down another well.   A part of this expense was obtained by the note in suit.   At this time all of the parties believed in the business and thought that the company would be able to pay the note when it should become due. Director Hammond, who is vice president and manager of the plaintiff bank, but who did not indorse the note, and is here a witness adverse to the defendants, testified:

"This matter of procuring an additional $5,000 was thoroughly discussed by the various members of the board of directors and we agreed this proposition was coming out all right and would be a profitable turn. I voted for it, as one of the directors, that the loan should be made."

From these facts and circumstances the circuit judge was wrong in holding that the corporation had its inception in fraud, that these defendants participated in the fraud, acted in bad faith in securing the loan for which the original note was given, and that they should be held as original obligors not entitled to notice of dishonor.   There is no evidence to support his findings in this respect.

The second question to be considered is whether the defendants waived notice of dishonor.   They were accommodation indorsers and as such each was entitled to notice of dishonor.

"When a negotiable instrument has been dishonored by * * * nonpayment, notice of dishonor must be given to * * * each indorser and * * * any indorser to whom such notice is not given is dis-

charged." Negotiable instruments law, § 91 (2 Comp. Laws 1915, § 6130).

It is conceded that notice of dishonor was not given within the time fixed by the statute, and that therefore the defendants were discharged from liability unless they waived such notice.

"Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." 2 Comp. Laws 1915, § 6150.

There is no evidence that, previous to the time when notice should have been given, the defendants said anything or did anything indicating that a waiver was intended. In fact, the bank did not rely on any belief of waiver in failing to take the necessary steps to fix the liability of the indorsers. It did give notice but too late to bind the defendants. Mr. Hammond, manager of the plaintiff bank, testified that the reason he did not give the notice in time was because he was very busy and it was not then convenient for him to do so. It is clear from the evidence that there was no waiver by any of the defendants prior to the time when notice should have been given. Was there a subsequent waiver? We think there was by Gibbs and Wagar. When the note became due and remained unpaid, Mr. Hammond, acting for the bank, got busy and carried on considerable correspondence with Gibbs and Wagar. There are letters in the record in which both of these defendants acknowledged their liability on the note. There is no evidence of such waiver on the part of defendants Downes and Moore. They are therefore discharged from liability. The question arising out of this situation is, Downes and Moore having been discharged, are the other defendants, Gibbs and Wagar, also released notwithstanding their waiver? If one of the indorsers is discharged are they all discharged? This depends on whether the

defendants are to be deemed joint indorsers only or joint and several indorsers.   If they are joint indorsers only all are discharged unless all receive notice or all waive notice.

"Prior to the negotiable instruments law, it was generally held that if two or more persons signed as joint indorsers, none could be compelled to pay the holder, unless notice was given to all, or waived by all, because the contract of endorsement involved only a contingent joint liability which was governed by common-law principles applicable to joint contracts." *Case* v. *McKinnis*, 32 A. L. R. 167, 182 (107 Or. 223, 213 Pac. 422).

The negotiable instruments law of this State has not changed the common-law rule except as to joint payees and joint indorsees who indorse.   It is so stated in section 70 of the negotiable instruments law, being section 6109, 2 Comp. Laws 1915, as follows:

\* \* \* "Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally."

The defendants here do not come within this statute because they were neither joint payees nor joint indorsees.   Nor were they prior and subsequent indorsers.   They indorsed the note in blank before delivery and were joint accommodation indorsers only, each entitled to notice of dishonor and all discharged unless each and all of them received such notice or each and all waived it.   None of them were severally liable to the holder.   Inasmuch, therefore, as Downes and Moore did not receive notice of dishonor in time to bind them and did not waive it either before or after the omission to give due notice, the other joint defendants who did waive are, notwithstanding their waiver, discharged from liability.

The other questions presented by the record relative to the conduct of the defendants in relation to the business affairs of the corporation in as far as they are supported by any evidence, are disposed of ad-

versely to plaintiff's claims in *Haynes Automobile Co.*
v. *Shepherd*, 220 Mich. 231 (25 A. L. R. 960), and
*Case* v. *McKinnis, supra.*

Judgment went against the Michigan-Arkansas Oil
Corporation by default.    As to the other defendants
the judgment is reversed, with costs, and without a
new trial.

CLARK, SHARPE, MOORE, STEERE, FELLOWS, and
WIEST, JJ., concurred.    BIRD, J., did not sit.