## MELLEN-WRIGHT LUMBER CO. *v.* McNETT.

1. Bills and Notes—Notice of Dishonor—Release of Indorser.
   Under 2 Comp. Laws 1915, § 6130, an indorser of a nego-
   tiable promissory note is entitled to due notice of dis-
   honor, and failure to notify him will release him of all
   liability.

2. Same—Knowledge of Dishonor Not Equivalent to Statutory
   Notice.
   That the indorser of a note had knowledge of the dis-
   honor is not equivalent to, and does not excuse failure
   to give, notice of dishonor, which must come from one
   entitled to look to the indorser for payment, and must
   inform him that the note has been presented for pay-
   ment and dishonored, and that the holder looks to the
   indorser for payment.

3. Same—Waiver of Notice Not Implied From Doubtful Acts.
   Although under 2 Comp. Laws 1915, § 6150, notice of dis-
   honor may be waived, such waiver, being in derogation
   of the statutory right of the indorser, will not be implied
   from doubtful acts or language of the indorser.

4. Same—Letter Written Before Maturity Not Notice of Dis-
   honor.
   A letter written by the payee to the indorser before
   maturity of the note, which did not give notice that pre-
   sentment had been made to the makers, that demand for
   payment had been made upon them, that the makers could
   not pay, or that they had dishonored the note, may not
   be construed as a notice of dishonor to the indorser.

5. Same—Language Addressed to Third Party Not a Waiver of
   Notice.
   Language importing a waiver will not have the effect of
   a waiver when addressed to a third person unconnected
   with, and not interested in, the paper.

[1]Bills and Notes, 8 C. J. § 895; [2]Id., 8 C. J. §§ 904, 915, 948;
27 L. R. A. (N. S.) 516; 3 R. C. L. 1240; 1 R. C. L. Supp. 194;
4 R. C. L. Supp. 241; 6 R. C. L. Supp. 236; [3]Id., 8 C. J. § 983; [4]Id.,
8 C. J. §§ 918, 951; 46 L. R. A. 804; 3 R. C. L. 1218; 1 R. C. L.
Supp. 1011; 6 R. C. L. Supp. 235; [5]Id., 8 C. J. § 979.

242—Mich.—24.

6. SAME—INDORSER NOT LIABLE WHERE NO PRESENTMENT TO MAKER OR NOTICE OF DISHONOR TO INDORSER.

Where there was no presentment to and demand for payment from the makers of a note, no notice of dishonor to the indorser, and no waiver by the indorser of notice of dishonor, he may not be held liable.

Error to Oakland; Gillespie (Glenn C.), J. Submitted January 5, 1928; resubmitted March 27, 1928. (Docket No. 64.) Decided April 3, 1928.

Assumpsit by the Mellen-Wright Lumber Company against Earl P. McNett and Anna J. McNett, makers, and William P. Kendall, indorser, on a promissory note. Judgment for defendant Kendall. Plaintiff brings error. Affirmed.

*Hartrick, Merritt & Storz* and *Pelton & McGee,* for appellant.

*Smith & Pence,* for appellee Kendall.

POTTER, J. Defendant William P. Kendall was an indorser on a promissory note of $2,000 due six months after date, with interest at seven per cent. made by Earl P. McNett and Anna J. McNett to the Mellen-Wright Lumber Company, dated December 12, 1925. Suit was commenced against the co-makers and indorser by declaration, to which was attached a letter, under date of June 10, 1926, as follows:

"June 10, 1926.

"Mr. WM. P. KENDALL,

"R. F. D. No. 7, Box 898.

"Royal Oak, Mich.

"*Dear Sir:* We hold note for $2,000 with interest at 7 per cent. signed by Earl P. McNett and Anna J. McNett, his wife, on which you indorsed guaranteeing payment.

"This note will be due June 12th and we are going to ask that you arrange to pay same promptly. We

would appreciate this being paid by not later than Friday, June 18th.

"Kindly advise if you wish to make payment at our office or at one of our local banks.

"We are inclosing stamped envelope for reply.

"Yours very truly,

"MELLEN-WRIGHT LUMBER CO.,

"J. B. DUNKEL, Secretary."

Defendant Kendall pleaded the general issue, and gave notice that he was an indorser on the instrument sued on, and that he never received notice of dishonor as required by the statute. There was judgment for plaintiff against the makers, and for defendant Kendall of no cause for action.

The record does not show the evidence introduced. There were no written requests for findings of fact and law. The trial court found the execution and indorsement of the note, and the writing by plaintiff and the receipt by defendant Kendall of the letter of June 10, 1926, above quoted. In response to this letter, June 10, 1926, defendant Kendall called at plaintiff's office and discussed the note with plaintiff's manager. June 12, 1926, the day on which the note became due and payable, defendant Kendall came to plaintiff's office and inquired for Mr. Dunkel, plaintiff's manager, and on the same occasion stated to one Schroof, one of plaintiff's employees, that he was on his way to Ferndale to get some money with which to pay the note. There is nothing in the letter of June 10, 1926, about the liability or responsibility of the makers of the note or their refusal to pay it. There is no evidence of what was said by either party when the note was discussed at plaintiff's office. It is not disclosed that Schroof said anything about the note not being paid by the makers or either of them. It is not apparent what Schroof's employment was.

The sole question upon these facts is whether the defendant is legally liable as an indorser.

An indorser of a negotiable promissory note is entitled to due notice of dishonor, and failure to notify him will release him of all liability.    *Stewart* v. *National Bank,* 40 Mich. 348; *Sweet* v. *Woodin,* 72 Mich. 393; *Barger* v. *Farnham,* 130 Mich. 487.

Section 6130, 2 Comp. Laws 1915, provides:

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

That Kendall, the indorser, had notice or knowledge of the dishonor is not equivalent to, and does not excuse the giving of, notice of dishonor, which must come from one entitled to look to the indorser for payment, and must inform him that the note has been presented for payment and dishonored, and that the holder looks to the indorser for payment.    8 C. J. p. 642, § 904.

In no department of the system of law applicable to bills and notes is there required more unyielding compliance with its rigorous demands than in regard to notice of dishonor.    3 R. C. L. p. 1218.

Section 6150, 2 Comp. Laws 1915, provides:

"Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied."

A waiver of presentment and notice, being in derogation of the statutory right of the indorser, will not be implied from doubtful acts or language of the indorser.    3 R. C. L. p. 1238.

In *Sinclair* v. *Lynah,* 1 Spears (S. C.), 244, the note was protested by a notary public, who stated that he exhibited the note at the residence of the maker and indorser, and in their absence left written notices

directed to them, demanding payment, the day of payment having expired. · The court said:

"On reading this statement, it is plain that the notary merely informed the indorser that the day of payment had expired, and that payment was expected from him. This was no notice that payment had been demanded from Edward Lynah, and that he had failed to pay."

The letter of June 10, 1926, was written before the maturity of the note. It does not give notice to the indorser that presentment had been made to the co-makers or either of them, that a demand for payment had been made upon them or either of them, that the makers could not pay, or that they had dishonored the note, and it cannot be construed as a notice of dishonor to Kendall.

In *Miller* v. *Hackley*, 5 Johns. (N. Y.) 375, 385 (4 Am. Dec. 372), it is said:

"The defendant only said to a third person, when talking generally of all the bills, * * * that *he would take care of the bills, or see them paid.* Whether he used the one phrase or the other, is left in doubt; * * * It would be dangerous to fix an indorser without notice, and perhaps without knowledge of the *laches* of the holder, upon such loose conversation with a third person. No case has ever gone so far."

In *Olendorf* v. *Swartz*, 5 Cal. 480 (63 Am. Dec. 141), the indorser said he would do what was right, and it was held that this declaration, addressed to a third party not interested in the subject-matter, was not a sufficient waiver of presentment and notice to fix the liability of the indorser.

In *National Bank of Poultney* v. *Lewis*, 50 Vt. 622 (28 Am. Rep. 514), an indorser wrote to the cashier of a bank:

"I will waive protest on the note of B. Lewis & Son of $200, dated June 13, indorsed by me."

At the time this letter was written the bank did not own the note, and it was held not to be a waiver of notice sufficient to hold the indorser.

In 8 C. J. p. 697, § 979, it is said:

"Language importing a waiver will not have the effect of a waiver when addressed to a third person unconnected with, and not interested in, the paper."

Schroof, so far as the record shows, was a third person, unconnected with and not interested in the paper.

In *Parsons* v. *Dickinson*, 23 Mich. 56, defendant was sued as an indorser on a promissory note. The defense was that he was never legally notified of its dishonor. It appeared that defendant stated to plaintiff he had not received the notice, but he expected to have to pay the note. He wished plaintiff would try and get it from the maker. Judgment was rendered for plaintiff in justice's court. Defendant did not appeal but removed the case to the circuit court by certiorari. It is said:

"The question in that court was, not whether the conclusion of the justice from the evidence was satisfactory, but whether there was any evidence from which his conclusion might be drawn. * * * Having selected the remedy by certiorari, he must show us wherein the justice erred in matter of law."

The judgment of the circuit court was reversed and that of the justice affirmed.

In *Bessenger* v. *Wenzel*, 161 Mich. 61 (27 L. R. A. [N. S.] 516), suit was instituted against defendant, an indorser on a promissory note. Defendant pleaded the general issue and gave notice that he was an accommodation indorser; that neither at the maturity of the note nor within a reasonable time thereafter was notice of its nonpayment given him, nor was any demand made upon him for payment; that the maker had subsequently become insolvent and bankruptcy

proceedings had been instituted against it. The defendant was a stockholder in a corporation. Before the maturity of the note it was talked over between plaintiff and defendant that the maker could not pay the note and it .would have to be renewed. Both plaintiff and defendant knew that there was no money in the bank to pay the note at maturity. All the corporate directors agreed the note should be renewed. The next day the interest on the note was paid and plaintiff was assured by defendant that the note was just as good as though it had been renewed. By these negotiations and transactions defendant was held to have waived notice of dishonor.

In *Gelder* v. *Welsh,* 169 Mich. 490, plaintiff sued defendant as indorser on a promissory note. Defendant pleaded the general issue and gave notice, among other things, that the note was never presented and protested for nonpayment. Defendant was secretary and manager of the Chelsea Manufacturing Company, Limited, makers of the note, and knew its financial affairs. He had notice that the note was presented at the place of payment when due, and that the company had no funds on hand to pay it and could not pay it. He asked the bank for an extension of time on the note, saying, "we don't believe it will be in time to take care of the note on the 12th." It is .said: "We think, under such testimony, there was evidence of waiver sufficient to submit the question to the jury."

Judgment against defendant was affirmed.

In *Porter* v. *East Jordan Realty Co.,* 210 Mich. 398 (11 A. L. R. 963), defendant, of which William Stroebel was vice-president, and Claude Mack was secretary and general manager, being indebted to Carl and William Stroebel, gave them its promissory note. Later the Stroebels sold the note to Waterman, who sold it, without recourse, to plaintiff, who left it for

collection at the bank of which Suffern was cashier. When the note was due, the bank cashier, Suffern, went to Mack's store on business connected with the defendant realty company.      Suffern told Mack the note was due, and Mack said defendant could pay the interest but could not pay the note.      The note was not produced by the cashier, Suffern.      The refusal of Mack to pay the note was based entirely on lack of funds.      The trial court held the presentment and demand insufficient to charge the indorsers.

Section 6115, 2 Comp. Laws 1915, provides:

"The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

This court said:

"The rule of the law merchant now made statute law by 'the negotiable instruments act is for the benefit of the maker—that he may examine the instrument to determine its genuineness, the right of the holder to payment, and upon payment may take it up and destroy it or keep it in his possession.      It is a provision personal to him and may be waived by him and is waived where he makes no request for its production and his refusal to pay is solely based on other grounds, *i. e.*, lack of funds.      The law does not require the doing of idle things, and such requirements as are for the sole benefit of the maker of the note may be waived by him."

Defendant was held liable.

In *Whitney* v. *Chadsey*, 216 Mich. 604, Mr. and Mrs. Herrick of Denver loaned several thousand dollars evidenced by 12 several promissory notes to the Cedaredge Orchard Company, which notes were indorsed by defendant who was president of the company, with the sole power to draw checks in payment of the company's indebtedness.      The company was engaged in planting and developing an orchard in Colorado.      The company's trees did not reach maturity, and it con-

tinued to borrow cash from Mr. and Mrs. Herrick to meet its carrying expenses. The notes were all short-time notes, given from time to time over a considerable period, and defendant continued to pay the interest thereon and did not claim he was relieved from liability as an indorser. The notes were indorsed to plaintiff for collection. The court held, under the facts, that defendant came within subdivision second of section 6156, 2 Comp. Laws 1915, and that the dealings between him and Mr. and Mrs. Herrick were such as might justify a finding that demand and notice were waived.

There having been no presentment to and demand for payment from the makers or either of them, no notice of dishonor to defendant Kendall, and no waiver by Kendall of notice of dishonor, he cannot be held liable as an indorser.

The judgment is affirmed, with costs.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, MCDONALD, and SHARPE, JJ., concurred.