Marshall, C. J.
 

 The state of this record is such that it is not necessary to discuss all the defenses, or all the issues. One issue is determinative, viz., the fourth defense in the answer, which alleges: “By way of fourth defense this defendant says that if the said Herman Steffens, during his lifetime, endorsed said note he did so as an endorser only and assumed only the liability of an endorser; that no demand of payment on the maker, The Washington Motor Company, was made at any time and no notice of nonpayment or notice of dishonor ever served on, or given to this defendant or to Herman Steffens during his lifetime.”
 

 The trial court rendered judgment for the plaintiff, and while the entry throws no light upon the mental processes of the court, that conclusion must have been reached either on the theory that the evidence showed that an oral demand was made and oral notice of nonpayment was given to the indorsers, or on the theory that the indorsers were directors of the Washington Motor Company, and that they were therefore not entitled to demand upon the maker, and not entitled to notice of dishonor.
 

 In reversing the judgment of the trial court, the Court of Appeals rendered final judgment in favor of the defendants, and this could only legally be done on the theory that there was no competent evidence of demand and notice of dishonor.
 

 Upon this feature of the case we must look to the undisputed testimony. The only evidence which it is claimed establishes the fact of demand and notice is that of plaintiff himself, as follows:
 

 
 *69
 
 “Q. Now you may state whether or not at meetings of the board you said anything to the board about these notes being overdue — did you? A. Yes, sir, I did and I mentioned it to them before it ever became due. I told them if The Washington Motor Company didn’t pay these notes I would hold them good for it and they know it too.
 

 “Q. Did you do so more than once? A. Yes, sir, most every meeting they had I brought this up about those notes. * * *
 

 “Q. Did you ever give him any notice that this note was unpaid? A. I brought it up before every meeting when them notes come due I expected them to pay and 1 went to see Christman and he said they were talking about selling the plant in Middletown and if they did he would pay me.”
 

 Even if an oral demand and oral notice be held to be sufficient, a principle which we do not in this case pass upon, it is evident that this testimony does not even tend to establish either demand or notice. The plaintiff himself realized the insufficiency of the alleged oral demand and notice, because in his petition he states: “Plaintiff says that the said defendant, The Washington Motor Company, was insolvent at the time of the maturity of said note and was not at said time meeting its obligations and that said defend' ants, John Voge, A. H. Christman, Frederick Moore, O. M. Shipley, Herman Steffens and Carl Bonomini knew that said company was at said time insolvent and that they had no reason to expect and believe that said note would be paid if presented to said company for payment. ’ ’
 

 The petition contained no other allegation of demand and notice.
 

 While the journal entry in the court of common pleas does not so state, it is evident that the court in determining that indorsers who were directors of the corporation, the maker of the note, were not entitled
 
 *70
 
 to demand and notice,' followed several decisions of Ohio Courts of Appeals, viz.:
 
 York
 
 v.
 
 Franklin Tractor Co.,
 
 22 O. L. R, 377, decided by the Court of Appeals of Franklin County;
 
 Fairbanks
 
 v.
 
 Armentrout,
 
 3 Ohio Law Abs., 373, decided bythe Court of Appeals of Hamilton County;
 
 Righter
 
 v.
 
 Sedgley,
 
 26 O. L. R., 364, decided by the Court of Appeals of Cuyahoga County;
 
 Wallace
 
 v.
 
 Firestone Bank,
 
 decided by the Court of Appeals of Columbiana County, reported in the paragraph digest of the Ohio State Bar Association Report for December 22, 1931, at page 483.
 

 In two of these cases motions to certify were filed in this court and overruled. It is well settled, however, that inasmuch as this court assigns no reasons for overruling a motion to certify the record, no principle of law is established by such overruling, neither does it follow even inferentially that the judgment of the Court of Appeals is indorsed as sound law. This cause was certified to this court because the Court of Appeals found its decision in conflict with
 
 York
 
 v.
 
 Franklin Tractor Co.,
 
 22 O. L. R., 377. In that case and in the other cases in the Courts of Appeals it was held that, where the directors of a corporation participate in the making of a loan and the giving of a note by the corporation as maker and sign as indorsers, they are liable as indorsers without notice of dishonor. And as reasons for that conclusion it was stated that “what they must have known as directors, they could not unknow as individuals.”
 

 In the opinion in
 
 York
 
 v.
 
 Tractor Co.,
 
 the court supported its conclusions by the citation of cases decided by the Supreme Courts of Tennessee, Michigan, Missouri, and Georgia. Without analysis of those authorities, it is sufficient to say that each and every one of those authorities has either been overruled, or found inapplicable to directors of a corporation as indorsers of negotiable instruments.
 

 In this error proceeding the decision must turn
 
 *71
 
 ugon the liability of an-indorser, as defined and declared by the Negotiable Instruments Act of Ohio, and particularly Sections 8168, 8175, 8185, 8194 and 8220, General Code.
 

 Prior to the enactment of the Uniform Negotiable Instruments Act, the law merchant defined an “indorser” as one who transfers the title to a negotiable instrument by indorsing his name on the back thereof. He must have been either the payee or a subsequent owner and holder by indorsement. The existence of the character or relation of indorser presupposes the existence of some one sustaining the relation of indorsee. All this was materially changed by the statute. Section 8168 provides: “A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.”
 

 Section 8175 provides that demand of payment shall n'ot be necessary in order to charge persons primarily liable, but nevertheless expressly provides that, “except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers.” Section 8194 in unmistakable language entitles an indorser to notice of dishonor: “Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor" must be given to the drawer and to each indorser. Any drawer or indorser to whom such notice is not given is discharged.” The only exceptions to 8194 are those contained in Sections 8185 and 8220. Section 8185 relates to commercial paper made or accepted for the accommodation of the indorser without his having any reason to expect that it will be paid if presented. Section 8220 contains three additional exceptions, as follows :
 

 
 *72
 
 “1. When the drawee is a fictitious person, or a person not having capacity to contract, and the indorser was aware of the fact at the time he indorsed the instrument.
 

 “2. When the indorser is the person to whom the instrument is presented for payment.
 

 “3. When the instrument was made or accepted for his accommodation.”
 

 It is apparent that paragraph 3 of Section 8220 is identical in meaning with Section 8185. None of these exceptions applies in the instant case.
 

 The indorsers in the case at bar gave no indication of their intention to be bound in any other capacity than that of indorser, and by the terms of Section 8168 they must be conclusively deemed to be indorsers. By the terms of Section 8194, they must be held to be discharged in the absence of demand and notice.
 

 Prior to the enactment of the Uniform Negotiable Instruments Act the way was open to explain the relation of an indorser, as to whether he was an indorser technically and in a commercial sense, or a surety or guarantor of the note. The principles governing indorsers prior to that act are discussed at length in
 
 Ewan
 
 v.
 
 Brooks-Waterfield Co.,
 
 55 Ohio St., 596, 45 N. E., 1094, 35 L. R. A., 786, 60 Am. St. Rep., 719. That case is no longer sound law by reason of the changes in the law of commercial paper effected by the uniform act. It was because the law of commercial paper had been rendered uncertain in many respects by contradictory decisions that it was found necessary to enact a uniform law. One of those reasons is found in the fact that indorsements were open to many defenses which placed commercial paper in a state of confusion and rendered the liability of indorsers doubtful, and the duty of holders with respect to demand and notice a matter of uncertainty. It is still in the power of an indorser to indicate by appropriate words his intention not to be regarded as an
 
 *73
 
 indorser in a technical sense, and it is in the power of one who accepts commercial paper to have the indorsers waive demand and notice. In the absence of these precautions, the sections heretofore noted must be held to apply. The language of those sections is plain and free from ambiguity, and it is not necessary to justify the wisdom of such legislation. If any justification is necessary, it may be found in the opinion in
 
 Rockfield
 
 v.
 
 First Natl. Bank,
 
 77 Ohio St., 311, 83 N. E., 392, 14 L. R. A. (N. S.), 842. We shall not further dwell upon those reasons. It is sufficient to say that the syllabus in that case unequivocally holds that by virtue of the uniform act a “person so placing his name on the back of a paper by blank indorsement is an indorser and cannot be held in any other capacity. As such he is entitled, in order to render him liable, to notice of dishonor by those who are primarily liable, and failing demand and due notice to him, he is discharged.”
 

 This court has never declared that directors of a corporation constitute an exception to the case of
 
 Rockfield
 
 v.
 
 Bank, supra.
 
 Counsel for plaintiff in error have not cited any case outside of Ohio which has so declared. The courts of last resort of other states have in numerous instances declared that directors who become indorsers for the corporation are entitled to demand of payment and notice of dishonor.
 
 Keiser
 
 v.
 
 Butte Greek Consolidated Dredging Co.,
 
 48 Cal. App., 38, 191 P., 552;
 
 Tucker, Admx.,
 
 v.
 
 Mueller,
 
 287 Ill., 551, 122 N. E., 847;
 
 Crane
 
 v.
 
 Downs,
 
 108 Kan., 599, 196 P., 600;
 
 First Natl. Bank of Ludington
 
 v.
 
 Michigan-Akansas Oil Corp.,
 
 231 Mich., 597, 204 N. W., 719;
 
 Houser, Admr.,
 
 v.
 
 Fayssoux,
 
 168 N. C., 1, 83 S. E., 692, Ann. Cas., 1917B, 835. It has been so held by the United States Circuit Court of Appeals of the Second Circuit in
 
 Grandison
 
 v.
 
 Robertson,
 
 231 F., 785; in the Third Circuit in
 
 McDonald
 
 v.
 
 Luckenbach,
 
 170 F., 434;
 
 *74
 
 and in the Sixth Circuit in
 
 Murray
 
 v.
 
 Third Natl. Bank of St. Louis,
 
 234 F., 481.
 

 To declare that such directors are an exception to the very definite requirements of the statute would be the opening wedge to again making the rights and liabilities of indorsers a matter of uncertainty, and to that extent would impair the value of the uniform act.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Jones, Matthias, Day, Allen and Stephenson, JJ., concur.
 

 Kinkade, J., not participating.