**Melvin GELMAN, Appellant,**

**v.**

**PUBLIC NATIONAL BANK, Appellee.**

**No. 20353.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 22, 1966.

Decided March 31, 1967.

Mr. Mark P. Friedlander, Washington, D. C., with whom Messrs. Mark P. Friedlander, Jr., Blaine P. Friedlander, Washington, D. C., and Harry P. Friedlander, Arlington, Va., were on the brief, for appellant.

Mr. Ronald P. Seres, Washington, D. C., with whom Mr. S. David Rubenstein, Washington, D. C., was on brief, for appellee.

Before BURGER, WRIGHT and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

The appellee bank, on or about April 28, 1964, made a loan of $12,500 to the maker of a negotiable note payable in that sum 120 days thereafter. Appellant

had unqualifiedly indorsed the note at the maker's request and for his accommodation to enable him to obtain the loan. The maker did not pay the note at its maturity on August 27, 1964, and the bank failed to give appellant notice of the dishonor.

The bank brought an action on the note which appellant resisted on the ground, among others, that the omission of such notice effected his discharge from liability. The District Court granted summary judgment in the bank's favor, accepting its contention that a waiver of notice of dishonor was stipulated in the body of the note. The provision referred to, with key language italicized, is reproduced below.[1]

The Negotiable Instruments Law was the governing statute operative in the District of Columbia when the transaction in suit occurred. Its specifications conditioning the indorser's liability, though now supplanted by those of the Uniform Commercial Code,[2] purvey the foundation rules upon which our decision must rest.[3] For an indorser without qualification the NIL forged an engagement to pay the amount of the instrument "if it be dishonored and the necessary proceedings on dishonor be duly taken." [4] This contract it complemented with the requirement that notice of a dishonor, unless legally excused, be given to each indorser, and with the command that any indorser not furnished such notice be discharged.[5] Judicial precedents exhorted strict observance of these mandates,[6] even as to accommodation indorsers.[7]

1. "*Upon the occurrence, with respect to any* maker, *endorser* or guarantor *hereof, of any of the following:* making any misrepresentation to the payee for the purpose of obtaining credit or an extension of credit; calling of a meeting of creditors; appointment of a committee of creditors; assignment for the benefit of creditors; application for, or appointment of, a receiver of any of them or their property; filing of a voluntary or involuntary petition under any of the provisions of the Bankruptcy Act or amendments thereto; making or offering to make or the commencement of any proceeding for: reorganization, composition, extension arrangements, dissolution or liquidation; issuance of a warrant of attachment or for distraint, or of a notice of tax lien; entry of a judgment against any of them, or against the property of any of them; failure to pay, withhold, collect or remit any tax or tax deficiency when assessed or due; death; making or sending notice of an intended: bulk sale, deed of trust, assignment, mortgage or pledge of accounts receivable or of any other property by any of them; suspension of their usual business; failure, after demand, to furnish financial information or to permit inspection of any books or records; *default in payment* or performance *of this note* or any other obligation to, or acquired in any manner by payee; or if at any time in the sole opinion of the financial responsibility of any of them shall become impaired or unsatisfactory, *then this note and all other obligations, direct or contingent, of any* maker, *endorser*, or guarantor *hereof, to payee shall become due and payable immediately, without notice or demand.*"

2. The UCC, D.C.Code §§ 28:1-101 to 28:10-104 (Supp. V 1966), became effective on January 1, 1965. The enacting statute repealed all of the original sections of the NIL. Pub.L. 88-243, § 15(a)(2), 77 Stat. 774 (1963).

3. Pub.L. 88-243, § 15(b), 77 Stat. 775 (1963).

4. "Every indorser who indorses without qualification * * * engages that on due presentment it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it." D.C.Code § 28-507 (1961 ed.).

5. "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." D.C.Code § 28-701 (1961 ed.).

6. Bovay v. Fuller, 63 F.2d 280, 282 (8th Cir. 1933); Mellen-Wright Lumber Co. v. McNett, 242 Mich. 369, 218 N.W. 709, 710 (1928); Torgerson v. Ohnstad, 149 Minn. 46, 182 N.W. 724, 725 (1921).

7. Lucas v. Swan, 67 F.2d 106, 90 A.L.R. 210 (4th Cir. 1933); Sandler v. Scullen,

Parties secondarily liable could, of course, dispense with formal notice of dishonor,[8] and surely the stipulation relied on, if it had that effect, bound appellant as an indorser.[9] But alleged waivers were examined with caution. They would not be inferred from doubtful or ambiguous words, nor would the words used be expanded beyond their common intendment.[10] Stated affirmatively, the intention to forego notice had to be clear.[11] It is by these principles that the disposition of this case made in the District Court is to be tested.

The language upon which appellant's waiver of notice of dishonor supposedly rests is but a small fraction of a comprehensive provision cast wholly in the mold of an acceleration clause. With the possible exception of the default in payment this language alludes to, each of the numerous contingencies particularized is intimately allied with acceleration but completely alien to a breach of obligation at an unaccelerated maturity. Not only are we struck by the thought that this is a rather unusual place to put an indorser's renunciation of notice of dishonor but, scrutinizing the provision in the light of the bank's contention, we are unable to attach that significance to it. Our conclusion is that while the provision, properly construed, authorized the bank to elect to call for payment of the note upon the happening of an event stated without prior demand or notice of intention to accelerate, it was inefficacious to eliminate the necessity for notice to appellant of the maker's dishonor by nonpayment at its designated maturity.

In harmony with the interpretations sustained by the substantial weight of authority,[12] we view the provision as conferring an optional power to accelerate. Although it is automatic in form, a holding that it would have become self-executing upon an occurrence enumerated would run counter to its evident purpose. Acceleration clauses are designed to benefit the holder, who should be free to decide whether in particular circumstances the authorization will be utilized. An automatic acceleration would not only rob the holder of this choice but might well produce unintended or even harsh results.[13]

Thus, as an optional alternative, this provision could become operative only in consequence of affirmative action by the holder. Stated otherwise, some

290 Mass. 106, 194 N.E. 827 (1935); First National Bank v. Michigan-Arkansas Oil Corp., 231 Mich. 597, 204 N.W. 719 (1925).

8. "Notice of dishonor may be waived either before the time of giving notice has arrived or after the omission to give due notice, and the waiver may be expressed or implied." D.C.Code § 28-721 (1961 ed.). And "[a] waiver of protest, whether in the case of a foreign bill of exchange or other negotiable instrument, is deemed to be a waiver not only of a formal protest, but also of presentment and notice of dishonor." D.C.Code § 28-723 (1961 ed.).

9. "Where the waiver is embodied in the instrument itself it is binding upon all parties * * *" D.C.Code § 28-722 (1961 ed.).

10. Liberty Bank & Trust Co. v. Hand, 269 Ky. 342, 107 S.W.2d 285, 286 (1937); Mellen-Wright Lumber Co. v. McNett, supra note 6, 218 N.W. at 710 (1928); Eastman v. Pelletier, 114 Vt. 419, 47 A.2d 298, 301 (1946).

11. Examples of the strictness with which such waivers are construed are Hall v. Crane, 213 Mass. 326, 100 N.E. 554 (1913), holding that an express waiver of demand does not eliminate the need for notice of dishonor, and Baer v. Hoffman, 150 App.Div. 473, 135 N.Y.S. 28 (1912), holding conversely that a waiver of notice of dishonor does not dispense with presentment for payment.

12. See the cases collected in Annot., 159 A.L.R. 1077, 1084-91 (1945).

13. See Keene Five Cent Savings Bank v. Reid, 123 F.2d 221, 224-225 (8th Cir.), cert. denied 191 U.S. 567, 24 S.Ct. 841, 48 L.Ed. 305 (1903); Peter Fuller Enterprises v. Manchester Savings Bank, 102 N.H. 117, 152 A.2d 179, 181-182 (1959); Grozier v. Post Publishing Co., 342 Mass. 97, 172 N.E.2d 266, 271-272 (1961); Chaffee, Acceleration Provisions in Time Paper, 32 Harv.L.Rev. 747, 764-767 (1919).

positive step on his part manifesting an election to exercise the option would become a *sine qua non* of acceleration,[14] and what would be required is conduct so clear and unequivocal as to leave no doubt on that score.[15] Presentment and demand for payment would become conditions precedent to execution of the option,[16] and notice of intention to accelerate, while unnecessary if the aim is sufficiently made known in some other fashion,[17] is an obvious and frequently used method of announcing what the holder has in mind.[18]

This analysis reveals the true role of the words "without notice or demand." With them the instrument could be accelerated without any notice of an intention to do so and without any demand for payment of the obligation.[19] The words then would perform an important function in eliminating these steps from the process by which its maturation might be hastened.

Beyond the exigencies of acceleration, however, there remained, when the parties formulated their bargain, the possibility of default in payment and the concomitant need for notice of dishonor. These two things—acceleration and notice of dishonor—were, of course, very different matters. An acceleration, had one occurred, would not have removed the necessity for notice of dishonor,[20] and waiver of notice of dishonor was independent of a disclaimer of steps incidental to acceleration.[21] Thus we reach the crucial question whether the provision upon which the bank relies sufficed as a relinquishment of both.

In our view, this provision does not reach beyond the orbit of acceleration. We recognize fully its capabilities as a dispensation of notice of contemplated acceleration, but to give it the broader construction—that the maker's nonpayment upon the note's unaccelerated due date need not be suitably proclaimed—would impermissibly strain both its language and its tenor. It would involve the selection and non-contextual reading of several words buried deep in a voluminous clause the overpowering thrust of which is specification of the conditions for acceleration. The specific language to which we are referred, like the remainder of the provision in which it is encouched, is more reasonably susceptible to the interpretation that it deals exclusively with a notice related to acceleration. And while in this character its meaning is plain, it has at most

14. See the cases collected in Annot., 5 A.L.R.2d 968, 970–972 (1949).

15. Carmichael v. Rice, 49 N.M. 114, 158 P.2d 290, 294, 159 A.L.R. 1072 (1945); Union Central Life Insurance Co. v. Adams, 169 Okl. 572, 38 P.2d 26, 28–29 (1934); City National Bank v. Pope, 260 S.W. 903, 904 (Tex.Civ.App.1924). See also Wentland v. Stewart, 263 Iowa 661, 19 N.W.2d 661, 161 A.L.R. 1206 (1945).

16. See the cases collected in Annot., 5 A.L.R.2d 968, 977–981 (1949).

17. See the cases collected in Annot., 5 A.L.R.2d 968, 981–984 (1949).

18. Notice of intention to accelerate is a step in but is not the end of the acceleration process. The notice must be followed by some affirmative act in the direction of enforcing the declaration, Wentland v. Stewart, *supra* note 15, 19 N.W.2d at 663–664; Union Central Life Insurance Co. v. Adams, supra note 15, 38 P.2d at 29, even if demand and notice of intention to accelerate have been waived. Carmichael v. Rice, *supra* note 15, 158 P.2d at 292.

19. Carmichael v. Rice, *supra* note 15, 158 P.2d at 292; Interstate Life Insurance Co. v. Turner, 371 S.W.2d 913 (Tex.Civ. App.1963). A good reason for dispensing with notice of election to accelerate is the frequency with which some mishap has occurred in the notification process to frustrate acceleration. See Stalder v. Riverside Groves & Water Co., 167 Cal. 560, 140 P. 252 (1914); Lee v. O'Quinn, 184 Ga. 44, 190 S.E. 564 (1937).

20. Berkowitz v. Kasparewicz, 121 Conn. 140, 183 A. 693, 695–696, 104 A.L.R. 1326 (1936); Farmers' Bank & Trust Co. v. Dent, 206 Ky. 405, 267 S.W. 202, 204–205 (1924); Bollenbach v. Ludlum, 84 Okl. 14, 201 P. 982, 984 (1921); Anderson v. Sperry, 155 Wash. 300, 284 P. 102 (1930).

21. Parker v. Mazur, 13 S.W.2d 174 (Tex. Civ.App.1928), holding that a waiver of presentment, notice and protest is not a waiver of declaration of an acceleration.

only a dubious aptitude to relieve the necessity for notice of dishonor.[22] In sum, we cannot say that it waives notice of dishonor in the clear and unambiguous way the law requires.[23] In this conclusion, we are in agreement with other courts which have declined to construe waivers of notice contained in acceleration clauses as legitimate substitutes for waivers of notice of a dishonor by nonpayment.[24]

Perhaps it is unnecessary to observe, as we conclude our review, that it did not have to end this way. Written waivers of presentment for payment, of notice of dishonor and, where essential, of protest are among the commonplaces of negotiable paper. The lender who desired to rid himself of possible future need to take these steps was at liberty to insist upon such an abnegation as a prerequisite to granting the loan; many indorsers, we know, willingly acceded to such a condition. But it was incumbent upon the parties not only to reach an agreement to waive but also to express themselves with such clarity as would reasonably assure that the covenant was made.

We reverse the judgment of the District Court and remand the case with direction to enter judgment in favor of appellant.

Reversed.

22. There having been no acceleration, the entire principal sum, by the terms of the note, fell due 120 days after its date. As the note also provided, interest would accrue only after its maturity. We recognize that a default in payment of a noninstallment note cannot of itself operate as an accelerating event, and that if the provision under consideration were referable only to nonpayment of the note at the maturity point originally fixed by its terms, it would be arguable that it lacks significance in relation to acceleration and so should be deemed a waiver of notice of dishonor. Compare Bell v. Watkins, 344 Pa. 668, 25 A.2d 320, 140 A.L.R. 1249 (1942). But the provision is not so limited. Upon default in payment or nonperformance either of "this note" or of "any other obligation to, or acquired in any manner by payee" it states, "this note" may be matured prior to the time fixed therefor. Thus, the note in suit could be accelerated upon nonpayment of any other note or obligation held by the bank. Moreover, the provision is unlimited as to the time of default—it covers defaults in payment upon an accelerated as well as the original maturity. The result, as a bare minimum, is that we cannot say that the claim to waiver of notice of dishonor is clear.

23. See *supra* notes 4 to 11 and related text.

24. Fisher v. Hoke, 185 Okl. 535, 94 P.2d 913 (1939); National Life & Accident Insurance Co. v. Varner, 171 Tenn. 95, 100 S.W.2d 662 (1937); Clausen v. Forehand, 152 Wash. 310, 277 P. 827 (1929).