## Farmers' Bank & Trust Company v. Dent, et al.

(Decided December 19, 1924.)

### Appeal from Breckinridge Circuit Court.

1.  Evidence—Indorser Claiming Unrestricted Indorsement Intended to be Without Recourse and Alleging Fraud Must Prove Contention Beyond Reasonable Controversy.—Under Kentucky Statutes, section 3720b-63, relating to liability of indorsers, one who claims indorsement was intended to be without recourse, and alleges fraud, must support such plea by clear and convincing evidence, and establish the fraud beyond all reasonable controversy.

2.  Evidence—Evidence Held Insufficient to Prove Fraud or that Unrestricted Indorsement was Intended to be Without Recourse.— Evidence held insufficient to show that defendant's indorsement of note was intended to be without recourse and that plaintiff's cashier fraudulently procured unrestricted indorsement.

3. Bills and Notes—Vendor of Land Discounting Purchase Money Notes Held Entitled to Notice of Dishonor, Not Being Accommodated Party.—Notes executed to vendor for purchase price of land, and sold to plaintiff bank, vendor indorsing same, were not for vendor's accommodation within Kentucky Statutes, section 3720b, dispensing with notice of dishonor to accommodated indorser.

4. Bills and Notes—Waiver of Notice of Dishonor May be Before or After Dishonor, and May be Express or Implied.—Under Kentucky Statutes, section 3720b-109, notice of dishonor may be waived by indorser either before time for notice or after omission to give due notice, and may be express or implied, and may result from any words and acts justifying holder in assuming indorser's intent to dispense with notice, or induce holder to forego necessary steps to fix liability.

5. Bills and Notes—Waiver of Notice of Dishonor Not Implied from Doubtful Acts or Language.—Waivers of notice of dishonor by indorsers are rather strictly construed, and will not be extended beyond fair import of terms used, nor will waiver be inferred from doubtful acts or language.

6. Bills and Notes—Letters in Regard to Contemplated Suit, Unless Indorser Agreed to Extension of Time, Held Not a Waiver of Notice of Dishonor.—Where vendor discounted purchaser's notes with bank, the latter's letter advising him as indorser that, unless he would agree to extension of notes, suit would be necessary, and his reply denying liability and inviting suit to clear matter up, held not waiver of notice of dishonor.

7. Bills and Notes—Acceleration Provision for Default on One of Several Notes Held Not to Render Notes Nonnegotiable—Acceleration Clause not Self-Executing.—Provision of deed and purchase money notes that, if any note is not paid at maturity, then all notes are to become due at holder's option does not render notes nonnegotiable, nor is such provision self-executing, but it confers on holder an option which must be exercised within reasonable time.

8. Bills and Notes—Suit by Holder on Several Notes Held Election to Treat Them all as Due Under Provision Authorizing Such Election on Default on One.—Where notes authorized holder on default on one to treat others as due, suit brought by holder on all the notes constituted an election to treat all as due, which in fact made them due both as to maker and indorser as of that date.

9. Bills and Notes—Indorser Held Entitled to Notice as to all Notes —Bringing of Suit by Holder Not Notice of Dishonor to Indorser. —On holder's electing by suit brought to treat several notes as due under acceleration clause, indorser was entitled to notice of dishonor of all, and mere bringing of suit was not notice of dishonor fixing his liability.

10. Bills and Notes—Notice of Dishonor Held too Late—Indorser Released from Liability by Delay.—Notice of dishonor given to indorser more than year after note was declared and treated as due

held insufficient, and, notice not having been waived, the indorser was released from liability.

ALLEN R. KINCHELOE and W. S. BALL for appellant.

MOORMAN & WALLS, MOORMAN & WOODWARD and ERNEST WOODWARD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On January 30, 1920, J. L. Gray sold and conveyed to W. V. Dent a three hundred and twenty acre farm situated in Breckinridge county. As part payment therefor Dent executed and delivered to Gray three promissory notes, one for $2,000.00, payable on or before January 30, 1921, another for $5,900.00, payable on or before January 30, 1922, and a third for $5,900.00, payable on or before January 30, 1923. On the day of the sale Gray endorsed and discounted the notes at the Farmers' Bank & Trust Company.

The deed and each of the notes contained a provision to the effect that if any one of the notes was not paid at maturity, then all the notes were to become due and collectible at the option of the holder. The first note, due on January 30, 1921, was not paid at maturity, and on February 1st, the Farmers' Bank & Trust Company brought this suit against Dent and Gray to recover on the notes and enforce its lien on the farm. Dent made no defense and judgment went against him for the amount of the notes and for the sale of the farm. Gray resisted a recovery on the ground that it was agreed between him and the trust company that the notes were to be signed and endorsed "without recourse," and that the cashier agreed and fraudulently represented that he would write the words "without recourse" before the endorsement on each note, and that Gray would not have endorsed said notes had it not been for such false and fraudulent representation. Another defense was plaintiff's failure to give notice of dishonor. Plaintiff denied the fraud and pleaded waiver of notice. On final hearing, judgment was rendered in favor of Gray, and plaintiff has appealed.

Subsection 63, section 3720b, Kentucky Statutes, is as follows:

"A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an endorser unless he clearly

indicates by appropriate words his intention to be bound in some other capacity.''

The purpose of the statute is to exclude parol evidence, and make the written instrument control the rights of the parties. First National Bank v. Bickel, 143 Ky. 754. Even if it be conceded for the purposes of this case that a different rule applies between the immediate parties to the transaction where there is a plea of fraud, we have reached the conclusion that the evidence in support of the plea should meet the standard required for the reformation of a written instrument, and should, therefore, be clear and convincing, and such as to establish the fraud beyond all reasonable controversy. Johnson, et al. v. Elkhorn Gas Coal Mining Company, 193 Ky. 585, 236 S. W. 1041. What took place between Gray and others who had no authority to represent the bank is without probative effect, and the question of fraud turns on what occurred between Gray and the cashier when the notes were discounted. Gray's evidence is to the effect that he went into the bank and said to the cashier: ''You understand that these notes are to be signed over without recourse,'' and the cashier said that he understood it. When he went to sign the notes, he again said to the cashier, ''You understand writing and are a better scribe than I, so I will sign these notes far enough down to give you room, and you put the 'no recourse' endorsement on them.'' The reason he did this was that he didn't understand what words were necessary in law to constitute an endorsement without recourse. The cashier said that he would do so and Gray then signed the notes about one-third of the way down and handed them to the cashier. Gray further claimed that about two months later he went into the bank and asked the cashier if he put that endorsement on the Dent notes, and he replied that he did. Later on he claims that he saw the cashier who said that it wasn't his understanding that the words ''without recourse'' should be on the notes. He then asked the cashier if he had not told him so. The cashier replied, ''Yes, I remember me telling you that I did, but I just wasn't noticing what I was saying.'' On the last mentioned occasion, Gray took his partner, C. L. Trent, to hear what Mr. Hendrick, the cashier, had to say. His account is that Gray said: ''Didn't you tell me that you would assign those notes?'' and Hendrick said, ''Yes, sir.'' Gray then said, ''What is the trouble about

them?'' Hendrick said, ''I reckon I just never noticed anything about what I was saying when I told you.'' On cross-examination Trent said that Hendrick denied that he agreed to ''endorse the notes,'' and that the principal part of the discussion was a dispute between Mr. Gray and Mr. Hendrick as to whether Hendrick agreed to ''endorse the notes.''

On the other hand, Mr. Hendrick, the cashier, says that Gray bought the notes from the bank and asked the bank to buy them without recourse. He told Gray that he could not handle them that way, that the finance committee would not allow him to buy any notes without recourse. There was never an agreement between him and Gray that the notes were to be endorsed without recourse, nor did he represent to Gray that he would write the words ''without recourse'' before his endorsement. He also denied telling Gray that he had placed the endorsement ''without recourse'' on the notes. He further denied making the statement attributed to him by Gray and Trent.

Considering the case in the light of the fact that ordinarily banks do not accept land notes endorsed ''without recourse'' unless the maker himself is good, or the security ample, and that endorsers who intend to be relieved of liability do not rely on the person with whom they are dealing to place on the note the words ''without recourse'' without seeing that this is actually done, it is doubtful if the weight of the evidence is with appellee. Certainly the evidence falls far short of being clear and convincing, and such as to establish the fraud beyond all reasonable controversy. At most it merely raises a doubt which will be resolved in favor of the usual course of dealing between lender and borrower.

It remains to determine whether the want of notice of dishonor is available as a defense. Though it be true that Gray, as endorser, discounted the notes and received the money from the bank, yet as the notes were executed to pay for land which the maker had purchased, and as Gray, the payee and endorser, would have had a right of action over against the maker if he had paid the notes, it follows that the notes were not made for his accommodation within section 3720b, Kentucky Statutes, dispensing with notice of dishonor to the endorser ''where the instrument was made or accepted for his accommodation.'' Brown v. Crofton, 76 S. W. 372. As no notice of the dis-

honor of the first note was given, it follows that Gray, as endorser, was released from liability thereon unless the notice was waived, which may be done either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied. Subsection 109, section 3720b, Kentucky Statutes. The waiver may result from any words and acts which by fair and reasonable construction are of such character as will justify the holder in assuming that the endorser intended to dispense with notice, or induce the holder to forego the usual steps necessary to fix the liability of the endorser. 8 C. J. 699. In as much, however, as waivers are in derogation of the admitted rights of an endorser they are construed rather strictly and will not be extended beyond the fair import of the terms used, nor will they be inferred from doubtful acts or language. 8 C. J. 700. On the question of waiver the facts are these: The $2,000.00 note was due on January 30, 1921, which fell on Sunday. On January 24, 1921, the bank wrote to Gray as follows:

"You are endorser on note for $2,000.00 with Mr. W. V. Dent, which matured on January 30th. It will be necessary that we file suit on this note this February term of court unless by your written consent you will agree for us to extend to Mr. Dent more time in order that said note may be taken up later in the winter."

On January 31, 1921, Gray sent the following reply:

"Mr. W. V. Dent came to see me on last Saturday and stated that your bank had indicated that it would carry his land notes and extend the time of their payment and not sue at this term of court, provided that I would agree to such extension.

"I reiterated to Mr. Dent, as I maintained to you in Moorman & Walls' offices the other day, that those notes were endorsed without recourse or liability on me; and, that I would agree to nothing, because you took the notes and agreed not to hold me. So, as my counsel indicated to you in their office, you had better proceed by suit as I want the matter cleared up, in so far as it is alleged to involve me."

The bank's letter was simply a notice that it would be necessary to file suit on the note unless Gray agreed in writing for an extension of time. The substance of

Gray's letter is that he would agree to nothing as he was not liable on the notes, and that the bank had better proceed by suit as he wanted the matter cleared up, in so far as it involved him.   Having disclaimed all liability, the mere direction to file suit was not reasonably calculated to induce the bank to forego any of the steps necessary to fix liability.   On the contrary, the language of the letter was such as to make it plain to the bank that Gray stood on his rights, and waived nothing.   It follows that Gray was released from liability on the first note.

The next question for decision is, whether Gray, the endorser, was entitled to notice of the dishonor of the two remaining notes.   As before stated, the deed and each of the notes contained a provision that if any one of the three notes was not paid at maturity, then all, the notes were to become due and collectible at the option of the holder.   Such a provision does not render a note non-negotiable.   Finley v. Smith, 165 Ky. 445, L. R. A. 1915F 777, 177 S. W. 262.   Moreover, the provision is not self executing, but confers on the holder the option to treat the note as due, an option which he must exercise within a reasonable time.   Nickell v. Bradshaw, 94 Or. 580, 183 Pac. 12, 11 A. L. R. 623.   The first note was due on January 30, 1921, but as that day fell on Sunday, its maturity was extended to the following day.   Subsection 85, section 3720b, Kentucky Statutes.   On the next day thereafter suit was brought on all three of the notes and this constituted an election by the bank to treat all the notes as due.   Hewitt v. Dean, 91 Cal. 5, 27 P. 423, 8 C. J. 417. Having treated the notes as due on that day, they, in fact, became due on that day, not only as to the endorser, but as to the maker.   Carlon v. Kenealy, 12 M. & W. 139, 152 (reprint) 1144; Kinsel v. Ballou, 151 Cal. 754. Being due as to the endorser, he was entitled to notice of dishonor.   Mallon v. Stevens, 6 Oh. Dec. (reprint) 1042. Clearly, the mere bringing of the suit was not a notice of dishonor of the second and third notes any more than of the first note.   The only notice of dishonor was that of the second note which was not given until January 30, 1922, a year after the note was declared and treated as due.   This was too late.   Being entitled to notice of dishonor, and none having been given within the required time, and the right thereto not having been waived, it follows that Gray, the endorser, was released from liability.

Judgment affirmed.