NATIONAL LIFE & ACCIDENT INS. CO. *v.* VARNER *et al.*

(*Nashville,* December Term, 1936.)

Opinion filed January 18, 1937.

TYNE, PEEBLES, HENRY & TYNE, of Nashville, and S. K. HICKS, of Madisonville, for appellant.

M. SILVER and SWAFFORD & WOODLEE, all of Dayton, for appellees.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

By the bill, complainant, the holder in due course of a series of notes, seeks a deficiency decree against two of the indorsers thereon. These indorsers insist that, having received no notice of dishonor, they are discharged. In response to this contention, complainant insists (1) that notice was unnecessary, since defendants had actual knowledge of the dishonor and (2) that notice of dishonor was waived by defendants.

The chancellor found in favor of complainant. The Court of Appeals reversed the decree of the chancellor and dismissed the bill. *Certiorari* has been granted and argument heard.

On July 29, 1929, Cedar Hill Hospital, Incorporated, executed a series of five notes, aggregating $15,000, to James R. Chamberlain, who in turn negotiated them to complainant. The notes contained the usual optional acceleration clause in case of default, and contained a recital that they were secured by a deed of trust on real estate situated in Dayton, Tenn. They were payable at the office of the National Life & Accident Insurance

Company, Nashville, Tenn. James R. Chamberlain is a mortgage or note broker in Chattanooga.

Upon default of the first two notes, complainant elected to declare the whole indebtedness due, and, on September 16, 1931, sold the property securing the notes for $7,500. It also received $2,000 by way of compromise from another indorser. The bill herein was filed on November 20, 1931.

"The mere fact that the party to be charged has knowledge of the dishonor is not the equivalent, and does not excuse the giving, of notice of dishonor." 8 C. J., 642.

In *Alton* v. *Robinson,* 2 Humph. (21 Tenn.), 341, 344, it is said: "In ordinary cases, personal knowledge on the part of the endorser, that the maker has made default in payment, will not supply the want of the notice required by the law merchant; neither will it in this case: knowledge is not notice." This rule was subsequently approved in *Lane* v. *Bank,* 9 Heisk. (56 Tenn.), 419, 435. The rule requiring presentment and notice was a rule of the law merchant. *Sykes* v. *Kruse,* 49 Colo., 560, 113 P., 1013.

A provision in a series of notes giving the holder the option to declare the whole sum due upon default in payment of principal or interest does not dispense with the necessity of giving notice of dishonor. *Bardshar* v. *Chaffee,* 90 Wash., 404, 406, 156 P., 388; *Farmers' Bank* v. *Dent,* 206 Ky., 405, 267 S. W., 202; *Bollenbach* v. *Ludlum,* 84 Okla., 14, 201 P., 982; *Anderson* v. *Sperry,* 155 Wash., 300, 284 P., 102.

In 8 C. J., 526, it is said: "If paper is payable in installments, demand of each installment must be made to preserve the liability of the endorser." It follows that upon default of each note notice must be given the in-

dorsers. But, where each note of a series contains a stipulation that "default or protest of this note makes all subsequent notes due and payable," notice to indorsers of default and protest of one note is sufficient to charge indorsers with liability on the remainder of the series. *Berman-Steinberg* v. *Standard Cotton Stores*, 146 Misc., 586, 262 N. Y. S., 495. Where the holder of a series exercises his option of declaring all due upon default of one, it would seem that all fall due at the same time, and one notice would be sufficient. *Farmers' Bank* v. *Dent, supra.*

Under the Uniform Negotiable Instruments Act (Code 1932, sec. 7325 et seq.) the right of an indorser is not changed because he suffers no apparent damage by reason of failure to demand payment and give notice of dishonor to him within the required time. 3 R. C. L., 1224.

While we concur with the chancellor in his finding that these indorsers had actual knowledge of the default, we are unable to assent to his holding that such knowledge obviated the necessity of giving them notice of dishonor.

Upon the question of waiver, counsel for complainant make two contentions: (1) Under the terms set forth in the deed of trust, and (2) by conduct before and after the foreclosure of the deed of trust.

With respect to the first, reliance is had upon a clause providing that upon default in paying any note, interest, taxes, insurance, etc., "then the debts herein secured shall, at the option of the said James R. Chamberlain, or his heirs or assigns, without notice, become immediately due and payable." This has no reference whatsoever to indorsers waiving notice of dishonor, but sim-

ply authorizes the holder of the notes to accelerate their payment without notice to the maker or indorsers. Had the deed of trust provided for waiver of notice of dishonor by the indorsers, it is doubtful whether that would have been binding upon them. They were not parties to the deed of trust, the notes which they indorsed contained no waiver either on their face or back, and did not incorporate or adopt the provisions of the deed of trust. The weight of authority is to the effect that, unless a negotiable note upon its face incorporates or is made subject to a deed of trust securing same, the general rule as to two contemporaneous instruments being construed together does not apply. *Enoch* v. *Brandon,* 249 N. Y., 263, 164 N. E., 45; *Paepcke* v. *Paine,* 253 Mich., 636, 235 N. W., 871, 75 A. L. R., 1205, annotation to the last-named volume, at page 1211.

Regarding the second basis of waiver, we consider the evidence inadequate to constitute a waiver. When the testimony is boiled down, it presents a situation where these indorsers knew that the hospital was financially embarrassed, unable to meet its obligations, and would have to go out of business unless some method of reorganization could be brought about. In this situation, after the foreclosure, these indorsers, other interested parties, and counsel for complainant met together and discussed the situation, but so far as waiving their statutory right to notice, express or implied, or saying or doing anything that misled complainant, or induced it to refrain from giving notice, we find no supporting evidence.

Section 7433 of the Code provides as follows:

"Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission

to give due notice, and the waiver may be express or implied.''

In 8 C. J., 699, 700, it is said:

''A waiver may result from implication and usage or from any words and acts which by fair and reasonable construction are of such a character as will satisfy the mind that a waiver was intended, or which will justify the holder in assuming that the endorser intended to dispense with notice, or to induce the holder to forego the usual steps necessary to fix the liability of the endorsers. Such waivers, however, being in derogation of the admitted rights of an endorser, are rather strictly construed, are not to be extended beyond the fair import of the terms used, and will not be inferred from doubtful acts or language.''

''Acts, admissions, or promises after maturity, in order to be evidential of a waiver of presentment and notice, or of an excuse for the want of presentment and notice, must be done or made with full knowledge of the discharge from liability upon the contract of indorsement, and must, in form and effect, be unequivocal and unconditional.'' *Jordan* v. *Reed,* 77 N. J. Law, 584, 71 A., 280, 284.

''Waiver is the intentional abandonment of a known right, not a trick to catch one napping.'' *McKee* v. *McGhee,* 114 S. C., 183, 103 S. E., 508. To the same effect, see *Boyce* v. *Toke Point Oyster Co.,* 145 Or. 114, 25 P. (2d), 930.

To constitute an implied waiver of notice of dishonor of a negotiable instrument by an indorser, his acts must warrant the holder in not taking steps necessary to charge the indorser. *Kelly* v. *Ford* (W. Va., 1934), 176 S. E., 705.

██ If an indorser of a note, with full knowledge that he has been discharged from liability by the failure of the holder to make proper demand and give due notice of nonpayment, promises to pay the note, or acknowledges his liability therefor, he thereby binds himself; and he may be proceeded against as if his liability had been legally fixed in the first instance. But to have this effect, the promise or acknowledgment must be distinctly made. *Carnegie Steel Co.* v. *Chattanooga Construction Co.* (Tenn. Ch. App.), 38 S. W., 102; *Rosson* v. *Carroll,* 90 Tenn., 90, 16 S. W., 66, 12 L. R. A., 727; *Bogart* v. *McClung,* 11 Heisk. (58 Tenn.), 105, 27 Am. Rep., 737; *Martin* v. *Ewing,* 2 Humph. (21 Tenn.), 559; *Durham* v. *Price,* 13 Tenn. (5 Yerg.), 300, 26 Am. Dec., 267. And the promisor must be under no misapprehension as to either the law or the facts. *Williams* v. *Union Bank,* 56 Tenn. (9 Heisk.), 441.

Applying these principles of law to the facts of this cause, we find no substantial evidence of an intention on the part of these indorsers to waive notice of dishonor.

██ ██ What we have said answers all of the errors assigned with the exception of the fifth one, which complains of the action of the chancellor in permitting defendants to amend their answer. Complainant was permitted to amend its bill so as to meet the issue of failure to give notice of dishonor, and the cause was continued in order that additional proof might be taken as to this issue. These indorsers were relying upon want of notice all along, but did not understand that it had to be specially pleaded as a defense. The bill alleged dishonor and notice to the indorsers. Such an averment seems to be necessary where it is sought to hold the indorsers. 8 C. J., 901. In the note numerous cases are

cited, including three decided by this court. In pleading, as a general rule, one is required to prove whatever it is necessary to aver.

There is also authority for the proposition that want of notice of dishonor has to be pleaded by way of defense. 8 C. J., 939. We will not decide at this time what is the proper practice in such cases, since that question is not involved. It is sufficient to say that, since this question has not been determined by this court and appears to be one as to which there is some conflict in the authorities, in view of the liberal practice in this jurisdiction with respect to amending pleadings, we are clearly of the opinion that the chancellor did not abuse his discretion in allowing the amendment.

We have considered the various assignments of error and find them without merit, and therefore affirm the decree of the Court of Appeals.