**Clyde FRENCH, Appellant,**

v.

**James WINSTEAD, Appellee.**

Court of Appeals of Kentucky.

Feb. 15, 1957.

Pleaz Wm. Mobley, Roy W. House, Manchester, for appellant.

John P. Allen, Mt. Vernon, Fritz Krueger, Somerset, for appellee.

MOREMEN, Judge.

This is an appeal from a judgment by which appellant was declared indebted to appellee on a note secured by a mortgage.

Appellee, James Winstead, owned a building near Mt. Vernon in which he operated a garage, repair shop, filling sta-

tion, and automobile parts store. He sold a one-half undivided interest in the automotive business (not the building) to Virgil Stokes, a relative by law, and from him obtained a promissory note for the unpaid purchase price secured by a chattel mortgage. Stokes leased from appellee one-half of the building and premises for which he agreed to pay $100 per month and in this way equalized with appellee the capital overlay.

Later appellee decided to withdraw from this joint operation of the garage business and, on July 30, 1952, appellee Winstead sold to appellant, Clyde French, his remaining one-half undivided interest in the business. Appellant paid $2,700 in cash. The balance of the purchase price was evidenced by a note for $5,300 and was secured by a mortgage on the personalty. The note executed contained a standard acceleration or precipitation clause. Appellant and appellee also entered into a lease by which appellant agreed to pay $100 per month rent for the remaining one-half undivided use of the building.

Under the terms of the note and mortgage, installments of $1,000 were due every twelve months for a period of five years, the interest to be paid semi-annually. The lease provided that in the event the monthly payment of $100 was not made within the month when it became due, the lessor had the right to cancel the lease. Appellant made two installment payments on the note, together with interest, one in 1953 and another in 1954; he paid the interest up to February 1955; he paid rent of $100 per month up to December 1, 1954.

On February 19, 1955, appellee filed a complaint in the Rockcastle Circuit Court in which he alleged the general terms of the mortgage, note and lease, stated that the rent for the property, insofar as it was owing by appellant, was unpaid for three months, and there remained due and unpaid interest on the mortgage and note in the sum of $82.50. The terms of the acceleration clause were alleged and ap-

pellee sought to coerce payment of the entire indebtedness owed by appellant.

One of the defenses offered by appellant, and the one relied on at the trial, was that appellant had offered and tendered the rent money to appellee who had refused the tender and, insofar as payments under the promissory note were concerned, it was stated:

"Defendant states that the principal on the promissory note, the interest hereupon, and the monthly rent, one-half part of $100.00 on premises, have been ready, offered and tendered at any and all times to the plaintiff on or before any were due, and that no demands have ever been made upon the defendant by the plaintiff and no complaint has been made concerning the mortgage or the lease until the filing of plaintiff's complaint."

It is noted that the answer itself does not contain a tender which would bring it up to date, it simply relies on a purported tender developed by the evidence. Since this purported tender is the crux of the case, perhaps we should let the appellant describe it:

"On January 7th, I wrote Jim Winstead a check for $200.00 rent, that was for Virgil Stokes and myself and I dated it December rent, that evening or the following evening I forget which, he brought it back and told me it wasn't right, it should be November rent, so I tore the check up and wrote him another one for November rent, at that time I told him that I had the money to pay my part any time that he wanted it. I had it there, my rent and interest, he told me just wait a while and see what Virgil was going to do."

Appellant stated he had no conversation with appellee after the one held on January 7.

Appellee denied that appellant ever made offer to pay either rent or interest and stated that he had demanded payment.

At the conclusion of all the testimony, the court peremptorily instructed the jury to find for appellee on the grounds that even if the defendant's statement above stated were accepted at full value, such a statement does not constitute a waiver of the payment of interest due, does not constitute a valid offer and is entirely without consideration. He did not comment on the fact that the offer had not been renewed, but we assume that was also taken into consideration.

On this appeal, it is contended by appellant that: (1) forfeiture and acceleration clauses are not favored by the law; (2) a proper tender was made; (3) appellee waived his right to declare a forfeiture and to ask for enforcement of the acceleration clause; and (4) a directed verdict should not have been given.

■ In support of his contention that the acceleration clause works a forfeiture and therefore is not favored by the law, appellant cites Bratcher v. Ashley, Ky., 243 S.W.2d 1011, which involves KRS 242.320. It provides, under certain conditions that property used in connection with the unlawful sale or transportation of intoxicating liquor may be forfeited to the state. Such a forfeiture is imposed as punishment for a criminal act. It is set up as a possible restraint for violation of the law. Hence the law of the Bratcher case is not applicable here.

The purpose of the acceleration clause in the note and mortgage is not to punish any one for violation of law, it only serves to protect the payee or mortgagee from long delay in cases where the mortgagor or the payor has evidenced irresponsibility. Such a clause makes the loan more attractive to the lender and thereby enhances the borrower's opportunity to obtain credit.

We have been unable to find a case where the particular question of whether or not an acceleration clause is unconscionable or against the public policy of the state has been decided, but tacitly such a provision has been approved in many cases, including Farmers' Bank & Trust Co. v. Dent, 206 Ky. 405, 267 S.W. 202; and Finley v. Smith, 165 Ky. 445, 177 S.W. 262, L.R.A. 1915F, 777. We find no deleterious aspects to such a voluntary agreement.

■ The purported conversation between appellant and appellee, which we quoted above in this opinion, is not a sufficient tender to deny appellee the right to enforce his claim because it was not continued or renewed by answer or other pleading after the action began. In Automatic Equipment Co. v. Mohney, 295 Ky. 451, 174 S.W.2d 716, 718, it was said:

> "The universal rule is that a tender must be kept good where the debt or duty remains after a tender or refusal and it must be pleaded that the tenderer has at all times been, and still is, ready to pay the money or perform the duty. 26 R.C.L. 643, 658; 62 C.J. 689."

■ The tender if properly made and kept open in a case such as this would not have the effect of discharging the obligation on the note. It would only defeat the exercise of appellant's right to accelerate payment of the entire debt due, but, as we have stated, appellant did not keep his offer good. This fact is also an answer to appellant's third contention, that appellee waived his right to ask for enforcement of the acceleration clause. If appellant had, in his answer, tendered interest and payment to date, the condition would be such that at least a duty would have been placed on the court to submit to the jury the question of whether appellant's controverted claim that he had made an offer was, in fact, true. But appellant made no such tender and we believe the court was correct in directing a verdict for appellee.

Judgment affirmed.