HOME SAVINGS BANK *v.* REFIOR.

1. BILLS AND NOTES—INDORSEMENT—PRINCIPAL AND SURETY—PLEAD-INGS.

In action on note, indorsed by defendant, which was attached to declaration and which disclosed he was an indorser, not a surety, and no testimony was introduced showing him to have been a surety, the use of such term in the answer is considered a mere inadvertence although better practice would have been for defendant to request amendment which clearly would have been granted.

2. PLEADING—ADMISSIONS IN ANSWER—INDORSEMENT ON NOTE.

Trial court's holding as a matter of law that defendant was an indorser of note sued on and not a surety thereon *held*, proper where note attached to declaration indicated he was

an indorser and no testimony was introduced showing him to have been a surety, notwithstanding inadvertent allegation in defendant's answer that he was merely a surety thereon and court rule providing that statements of fact in an answer should be treated as an admission and need not be proved (Court Rule No. 23, § 6 [1933]).

3. BILLS AND NOTES—INDORSEMENT—ACCOMMODATION—NOTICE OF DISHONOR.

Renewal of corporate note at maturity when both the corporation and indorsers desired additional time did not change character of note to one for accommodation of one of the two indorsers who was president of the maker, notwithstanding president of plaintiff bank said he would carry it along for him as an accommodation to him, hence trial court properly held defendant was not an accommodation indorser, and, therefore, was entitled to notice of dishonor (2 Comp. Laws 1929, § 9364).

4. SAME—INDORSEMENT—NOTICE OF DISHONOR—DISCHARGE.

An indorser of a note is entitled to notice of dishonor and where such notice is not given he is thereby discharged (2 Comp. Laws 1929, §§ 9338, 9364).

5. SAME—INDORSEMENT—NOTICE OF DISHONOR—PROTEST—EXTENSION OF TIME.

President of corporation who had indorsed renewal note of corporation but was not shown to have been advised of extensions of time thereafter made nor to have consented thereto was discharged from liability thereon when binding extensions were made by payee bank's cashier and no notice of dishonor was given when it was protested for nonpayment (2 Comp. Laws 1929, §§ 9338, 9358, 9364, 9369).

6. SAME—INDORSEMENT—NOTICE OF DISHONOR—WAIVER.

Fact that president of corporation whose note he indorsed was an active member of creditors' committee which took over assets of the corporation prior to date note became due *held*, not to constitute a waiver of his right to notice of dishonor where it is not shown what amount of assets were taken over or the prospects at that time of the committee being able to pay the company's obligations as they were to continue the business (2 Comp. Laws 1929, §§ 9338, 9358, 9364, 9369).

7. SAME—PLACE OF PRESENTMENT—INDORSEMENT.

Presentment at maturity of note of corporation to president thereof who had indorsed it was unnecessary where it was

payable at payee bank (2 Comp. Laws 1929, §§ 9338, 9358, 9364, 9369).

8. SAME—INDORSER'S WAIVER OF NOTICE OF DISHONOR—EVIDENCE.
   In action against president of corporation whose note he had indorsed, record *held*, without evidence justifying submission to jury of question whether at time he indorsed note or before maturity he knew the maker would not care for its obligation at maturity so as to waive his right to notice of dishonor (2 Comp. Laws 1929, §§ 9338, 9358, 9364, 9369).

9. SAME—INDORSEMENT—NOTICE OF DISHONOR—DISCHARGE.
   An indorser of a negotiable promissory note is entitled to due notice of dishonor, and failure to notify him will release him of all liability (2 Comp. Laws 1929, § 9338).

10. SAME—IMPLIED WAIVER OF NOTICE OF DISHONOR.
    A waiver of presentment and notice, being in derogation of the statutory right of the indorser, will not be implied from doubtful acts or language of the indorser (2 Comp. Laws 1929, §§ 9338, 9358, 9369).

Appeal from Ingham; Carr (Leland W.), J. Submitted April 14, 1939. (Docket No. 60, Calendar No. 40,466.) Decided June 22, 1939.

Assumpsit by Home Savings Bank against Emil M. Refior for sums due on a promissory note. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Foster & Cameron* (*Howard, Howard & Howard,* of counsel), for plaintiff.

*Cummins & Cummins,* for defendant.

NORTH, J. This is a suit in assumpsit brought against defendant as an indorser on a promissory note. On trial by jury at the conclusion of plaintiff's proof the circuit judge granted defendant's motion for directed verdict of no cause of action. Judgment was entered thereon and plaintiff has appealed.

In directing verdict the circuit judge held there was no testimony tending to sustain plaintiff's claim (1) that the indorsed note was given for defendant's accommodation, or (2) to sustain plaintiff's claim that there was either express or implied waiver of presentment and of notice of dishonor; and (3) the circuit judge further held the undisputed testimony disclosed that time for payment was extended without the consent or approval of defendant and without reservation of right of recourse, and he was thereby released from liability as an indorser.

First, it should be noted, plaintiff asserts it was error for the circuit judge to hold as a matter of law that defendant's liability was that of an indorser instead of being that of a surety. The basis of plaintiff's contention that defendant is liable as a surety is the following allegation in his answer:

"And defendant further shows that he was merely a *surety* on said note, * * * and this defendant avers that by reason of such extensions of the time of payment of said note he *as such surety* or indorser was released from all liability thereon."

Under this record it appears beyond a doubt that the use of the word "surety" in the answer was a mere inadvertence. It misled no one. Plaintiff's declaration alleges a right to recover "upon a note * * * *indorsed* by defendant." The copy of the note, attached to the declaration, disclosed defendant was an indorser, not a surety. There is no testimony that he executed the note as a surety or ever assumed that character of liability on the obligation. Even in its brief in this court, appellant stated that the note upon which this suit is brought was "indorsed by Refior and McAfee." It might have been better practice had defendant asked the right to amend, which, if requested, clearly should have been granted. Plaintiff's contention, that under Court Rule No. 23,

§ 6 (1933), defendant should be held by his recital in his answer to be a surety instead of an indorser or that this issue should have been submitted to the jury, is not tenable.

As bearing upon the trial judge's holding as a matter of law that the note in suit was not one given for defendant's accommodation, the following facts are pertinent. Defendant and one Don J. McAfee, the other indorser on this note, organized the Kalamazoo Oil Company, a corporation. Excepting two shares held by the company's secretary, all of the stock in the company was held by defendant and McAfee. The company borrowed from the bank $10,000 on its note, indorsed by defendant and McAfee. From time to time, on maturity, the note was renewed. Some payments were made on the principal. On June 10, 1932, a renewal note for the unpaid balance of $7,750, payable in 90 days, was given to plaintiff by the company. The maker's signature is as follows: "Kalamazoo Oil Company. By E. M. Refior. By Don J. McAfee." On the back of the note it is indorsed: "Don J. McAfee" and "E. M. Refior." This is the note in suit. The oil company was not able to pay, at its maturity, the note of which this was a renewal, and this fact was known to defendant, who was the president of the company. Plaintiff alleges the note in suit was executed and delivered to plaintiff for defendant's accommodation; but this is denied in defendant's answer. As bearing upon plaintiff's contention that the note dated June 10th was for defendant's accommodation, we quote from its brief:

"If he had no reason to believe that the company would pay the new note when it should become due in September, then how can it be said that it was not for *his* accommodation that the bank accepted the new paper? He requested the acceptance of a document which he did not believe would be paid at

maturity and such acceptance would relieve him from paying on June 10th.''

Plaintiff stresses the claim that this note was given for defendant's accommodation because in such event under the statutory provision (2 Comp. Laws 1929, § 9364 [Stat. Ann. § 19.157]) notice of dishonor to defendant as an indorser would not be required. But the making of this renewal note was attended by no facts or circumstances other than such as often, perhaps usually, attend renewals of indorsed commercial paper. Further time for payment was desired by each of the obligated parties. But that fact did not change the character of the note from one given for the benefit or convenience of the corporation to a note for the accommodation of one of the two indorsers. A finding on this record by a jury to the contrary could not be sustained. Hence the trial judge properly held as a matter of law that the renewal note was not one for defendant's accommodation; but instead that defendant's liability was that of an indorser only. In reaching this conclusion we are mindful of the testimony of the president of plaintiff bank that at or about the time the renewal note in suit was given, he said to defendant the bank would "carry it (the note) along for him as an accommodation for him.'' But beyond question all parties concerned then understood and considered the renewal note as that of the oil company indorsed by defendant and McAfee. This president of the bank testified:

''When the note was renewed June 10, 1932, the situation was, so far as I know, no different than it was 90 days after that nor any different than it had been prior to June 10th.''

The only conclusion sustainable under this record is that the note was that of the Kalamazoo Oil Company, and not one for defendant's accommodation.

The circuit judge held that the undisputed testimony disclosed there was no notice of dishonor given to defendant, and that there was no showing by plaintiff of either an express or an implied waiver of notice. If this holding was correct, the directed verdict and judgment thereon must be affirmed.

Defendant's status being that of an indorser, he was entitled to notice of dishonor and, if such notice was not given, he was thereby discharged. 2 Comp. Laws 1929, § 9338 (Stat. Ann. § 19.131). Our review of this record disclosed no testimony or even the claim that notice of dishonor, on September 8, 1932, was given defendant; nor is there any testimony tending to establish either an express or an implied waiver of such notice. It is provided by statute that notice may be expressly or impliedly waived either before or after the date of otherwise giving the notice. 2 Comp. Laws 1929, § 9358 (Stat. Ann. § 19.151). But under this record we cannot agree with appellant that there was a question of fact presented in the circuit court as to waiver of notice. Instead of notifying defendant of dishonor of the note at its maturity, September 8, 1932, there was indorsed on the back of the note as of that date: "Time extended 90 days from date." And again, dated "January 23, 1933," there appears on the back of the note, "Time extended to March 1, 1933. Int. Pd. $116.25." These indorsements are in the handwriting of a cashier of the bank. There is no testimony that defendant had knowledge of either extension of time or that he ever consented thereto. A binding agreement for extension of time for payment releases an indorser unless he consents or right of recourse against him is expressly reserved. 2 Comp. Laws 1929, § 9369 (Stat. Ann. § 19.162). This note was payable at the bank and there is testimony of protest for nonpayment on December 8,

1932, but merely protesting nonpayment as of that date did not affect defendant's status. He was discharged from liability as an indorser by plaintiff's failure to give him notice of dishonor when it was not paid on the due date, September 8, 1932. The circuit judge correctly so held.

None of the issues hereinbefore considered are affected by the fact that a so-called creditors' committee was appointed in July, 1932, to take over the assets of the oil company, and defendant was one of the three members of such committee. The record discloses it was agreed that the president of plaintiff bank, as a member of the creditors' committee, should "run the oil company," and that from sometime in July, 1932, he did manage its affairs during the remainder of the time it continued in business. We are mindful of appellant's position stated as follows:

"We claim that Mr. Refior, by actively participating in taking *all* assets away from the corporation, made it impossible for the corporation to pay. Therefore, he *knew* the corporation would not pay and thereby he waived notice of dishonor."

At least one difficulty with appellant's contention just noted is that, as pointed out by the circuit judge, it is nowhere disclosed in this record as to the amount of assets taken over by the creditors' committee or the prospects at that time of the committee being able to pay the oil company's obligations, either from the conduct of its business or by liquidating its assets.

In support of its claim that defendant impliedly waived notice of dishonor, appellant cites: *J. W. O'Bannon Co.* v. *Curran,* 129 App. Div. 90 (113 N. Y. Supp. 359); *Manufacturers' Trust Co. of New York* v. *Wechsler,* 7 N. J. Misc. 886 (147 Atl. 459); and *Atlantic Refining Co.* v. *Nucar Forwarding Corp.,*

11 N. J. Misc. 541 (167 Atl. 677); *Alldred's Estate
No. 1*, 229 Pa. 627 (79 Atl. 141). These cases and
others of like character are clearly distinguishable
from the instant case. In each of the cited cases the
party sought to be charged on his indorsement had
taken part in affirmative action to place the primary
debtor in such position that it would be beyond its
power to pay or renew the indorsed obligation at
its maturity, as by asserting or admitting the
debtor's insolvency and instituting or consenting to
bankruptcy proceedings, or filing a receiver's bill
wherein the debtor's insolvency was averred. In
such cases, clearly, the indorser had definite knowl-
edge that the indorsed obligation would not be paid
or renewed at maturity. This was held to constitute
an implied waiver by him of notice of dishonor. But
in the instant case the appointment of the creditors'
committee and the assignment of the oil company's
assets to the committee members as trustees was all
done in contemplation of paying the creditors in full
and thereafter the remaining assets were to be re-
assigned by the trustees to the oil company. In the
assignment to the creditors' committee it is provided
they were to operate the business for the "benefit of
all of the creditors" of the oil company, and "it is
contemplated that under their management, direction
and control, all of the said creditors can and will be
eventually paid the full amount of their claims."

Like statements bearing upon the plan and pur-
pose of the assignment are embodied in the stock-
holders' resolution authorizing the assignment.
There is no showing that prior to the maturity of this
note defendant had any information as to whether
plaintiff would be paid. The record discloses it was
then assumed that the trustees would work out the
oil company's difficulties and pay all of its creditors.
Under such circumstances defendant, as an indorser,

was entitled to have the note presented for payment at maturity, and in event of its dishonor by nonpayment, to have notice thereof. There was no evidence in the instant case of implied waiver; and defendant was discharged by plaintiff's failure to give him notice of dishonor by nonpayment on September 8, 1932. 2 Comp. Laws 1929, § 9338 (Stat. Ann. § 19.131).

There was no need of presenting this note to defendant for payment at maturity. As noted above, it was payable at the bank. As a matter of fact, it was not presented to defendant. No testimony appears in this record which would justify submission to a jury appellant's contention that, when defendant signed the note in suit or before its maturity he knew the corporation would not care for its obligation at maturity. For a jury to have so found would have been mere guess or speculation.

"An indorser of a negotiable promissory note is entitled to due notice of dishonor, and failure to notify him will release him of all liability. (Citing cases.) * * *

"In no department of the system of law applicable to bills and notes is there required more unyielding compliance with its rigorous demands than in regard to notice of dishonor. * * *

"A waiver of presentment and notice, being in derogation of the statutory right of the indorser, will not be implied from doubtful acts or language of the indorser." *Mellen-Wright Lumber Co.* v. *Mc-Nett,* 242 Mich. 369.

Under this record the judgment entered on the directed verdict must be affirmed. It is so ordered, with costs to appellee.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred. McALLISTER, J., did not sit.